UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAPPIER MEDITATION, INC., <br><br> Plaintiff, <br><br> -v- <br><br> GRETCHEN RUBIN, <br><br> Defendant. | 25-cv-1713 (JSR) <br><br> OPINION & ORDER |
| GRETCHEN RUBIN, <br><br> Counterclaim-Plaintiff, <br><br> -v- <br><br> HAPPIER MEDITATION, INC., <br><br> Counterclaim-Defendant. | |
| GRETCHEN RUBIN, <br><br> Third-Party Plaintiff, <br><br> -v- <br><br> BENJAMIN RUBIN, <br><br> Third-Party Defendant. | |

JED S. RAKOFF, U.S.D.J.:

Before the Court is the motion of counterclaim-defendant Happier Meditation, Inc. ("Happier") and third-party defendant Benjamin Rubin ("Mr. Rubin") to dismiss the counterclaims and third-party claims brought against them by Gretchen Rubin ("Ms. Rubin").[1] Happier and Mr.

---

[1] Ms. Rubin's counsel avers that Ms. Rubin and Mr. Rubin are not related. See ECF No. 24 at 1.

1

Rubin contend that Ms. Rubin's counterclaim and third-party pleading fails to state any claim against them and must be dismissed under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court holds that it may not ignore certain of Ms. Rubin's well-pleaded allegations, as Happier and Mr. Rubin request. Moreover, Happier and Mr. Rubin have not demonstrated that Ms. Rubin is judicially estopped from making those allegations. Nor has Mr. Rubin established that Ms. Rubin's allegations as to him are so conclusory as to warrant dismissal. Accordingly, the motion to dismiss Ms. Rubin's counter- and third-party claims is denied.

I.   Factual Background[2]

Happier and Ms. Rubin both purvey self-improvement programs through such media as downloadable applications and podcasts. See Counterclaim and Third-Party Complaint, ECF No. 16 at 10-29 ("CC") ¶¶ 9, 18-20. Ms. Rubin owns two trademarks that are central to her claims against Happier and Mr. Rubin and also to Happier's underlying claims against her. In 2024, the United States Patent and Trademark Office ("USPTO") registered to Ms. Rubin the trademark "HAPPIER," characterizing it as related to "[d]ownloadable software in the nature of mobile applications" involving habit building, habit strategies, and habit practice, but "expressly excluding mobile applications relating to meditation and mindfulness." See CC ¶ 10; id. Ex. A. Earlier, in 2017, the USPTO registered to Ms. Rubin the trademark

---

[2] Except as noted otherwise, the Court draws this summary from the allegations in Ms. Rubin's Counterclaim and Third-Party Complaint.

"HAPPIER WITH GRETCHEN RUBIN," characterizing it as related to "[d]ownloadable podcasts in the field of self-improvement" and "[e]ntertainment and educational services, namely, providing streaming podcasts in the field of self-improvement." See CC ¶ 10; id. Ex. B.[3] Ms. Rubin has allegedly used the HAPPIER Trademarks since at least 2015 and has allegedly invested significant resources in developing them, such that now they have become "strong and famous source identifiers" for Ms. Rubin's goods and services. See CC ¶¶ 11-12.

According to Ms. Rubin, Happier used to offer its "self-improvement, meditation[,] and mindfulness products and services under the designation 'TEN PERCENT HAPPIER.'" See id. ¶ 16. In approximately summer 2024, Happier allegedly rebranded its goods and services from "TEN PERCENT HAPPIER" to simply "HAPPIER" and has, since that time, allegedly continued to market its goods and services under that designation and under the Internet domain name happierapp.com. See id. ¶¶ 17-19. Ms. Rubin allegedly learned of Happier's use of "HAPPIER" and happierapp.com in approximately September 2024. Id. ¶¶ 20-21. By letter dated September 17, 2024, Ms. Rubin's counsel advised Happier that its use of "HAPPIER" and happierapp.com was likely to cause -- and had in fact caused -- confusion on the part of reasonably prudent purchasers. See id. ¶¶ 25-30. The letter from Ms. Rubin's counsel further stated that Happier's use of "HAPPIER" and happierapp.com was likely to dilute Ms. Rubin's HAPPIER Trademarks; the letter therefore

---

[3] The Court refers to the trademarks HAPPIER and HAPPIER WITH GRETCHEN RUBIN collectively as the "HAPPIER Trademarks."

3

demanded that Happier immediately cease using "HAPPIER" and happierapp.com. See id. ¶ 31. Happier allegedly refused to comply with Ms. Rubin's demand and continued to use "HAPPIER" and happierapp.com. See id. ¶ 32.

As a result, Ms. Rubin claims that Happier and Mr. Rubin have engaged in trademark infringement, false designation and unfair competition, and trademark dilution under federal and New York law. See id. ¶¶ 33-90.

II. Procedural History

On February 28, 2025, Happier initiated an action against Ms. Rubin in this Court. See ECF No. 1. In Happier's Complaint, it sought (1) declaratory relief including, among other things, a declaration that Happier's use of "HAPPIER" does not constitute trademark infringement, false designation or unfair competition, or trademark dilution, see id. ¶¶ 39-43; (2) damages and injunctive relief based on Ms. Rubin's allegedly false and/or fraudulent registration of the trademark "HAPPIER," see id. ¶¶ 44-52; and (3) the cancellation, or in the alternative the transfer to Happier, of Ms. Rubin's registration of the trademark "HAPPIER," see id. ¶¶ 53-63. Happier did not seek relief in reference to the trademark "HAPPIER WITH GRETCHEN RUBIN." See generally id.

On April 23, 2025, Ms. Rubin answered Happier's Complaint and interposed counterclaims against Happier. See ECF No. 13. On May 13, 2025, Ms. Rubin amended her responsive pleading by, among other things, adding third-party claims against Mr. Rubin. See ECF No. 16.

4

On May 27, 2025, Happier and Mr. Rubin moved to dismiss the counter- and third-party claims against them. See ECF No. 19. Their motion was fully briefed on July 1, 2025, see ECF Nos. 20, 23-24, and is ripe for decision.

III. Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The standard is the same where a pleading is a counterclaim or third-party complaint. "Challenges to the sufficiency of a counterclaim or crossclaim under Rule 12 . . . are subject to the same rules as when they are directed toward an original complaint. The factual allegations in the pleading being attacked are taken as true and the motion will be denied if there is any plausible theory upon which relief ultimately might be granted." 6 Fed. Prac. & Proc. Civ. § 1407 (3d ed. 2025) (footnotes omitted); see Netrix Leasing, LLC v. K.S. Telecom, Inc., No. 00 Civ. 3375, 2001 WL 228362, at *8 (S.D.N.Y. Mar. 7, 2001).

Because Rule 12(b)(6) "assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it," Global Network Commc'ns, Inc. v. City of New York, 458

5

F.3d 150, 155 (2d Cir. 2006), courts may only consider materials beyond the four corners of a pleading in limited circumstances.[4] A pleading is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." Sierra Club v. Con-Strux, LLC, 911 F.3d 85, 88 (2d Cir. 2018). Where such documents, or in certain instances documents that can be judicially noticed, contain facts that contradict the pleading's allegations, the Court need not accept the contradicted allegations as true. See 5C Fed. Prac. & Proc. Civ. § 1363 (3d ed. 2025); see also, e.g., Bristol-Myers Squibb Secs. Litig., 312 F. Supp. 2d 549, 569 (S.D.N.Y. 2004) (rejecting allegations shown to be "demonstrably false" by documents integral to the complaint); In re Livent, Inc. Noteholders Secs. Litig., 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) (collecting cases).

IV. Discussion

At a high level, Happier and Mr. Rubin offer three arguments in favor of dismissal. First, they contend that Ms. Rubin's counterclaim and third-party complaint alleges facts that contradict representations that Ms. Rubin made to the USPTO, that the Court should disregard the contradictory allegations, and that Ms. Rubin fails to

---

[4] Apart from these circumstances, a court must either exclude extrinsic materials from its consideration or convert the motion to dismiss into a motion for summary judgment and provide the parties an opportunity to conduct relevant discovery and submit supporting evidence. See Fed. R. Civ. P. 12(d).

6

state any claim once those allegations are set aside. <u>Second</u>, Happier and Mr. Rubin contend that the Court should also disregard Ms. Rubin's purportedly contradictory allegations under the equitable doctrine of judicial estoppel. <u>Third</u>, Mr. Rubin argues that Ms. Rubin's third-party complaint contains only conclusory allegations as to his potential liability and therefore fails to state any claim against him. The Court discusses each argument in turn.

A.  The Allegedly Contradictory Allegations

Happier and Mr. Rubin first argue that certain allegations in Ms. Rubin's pleading contradict representations that she made to the USPTO at the time she was seeking registration for the trademark HAPPIER. <u>See</u> ECF No. 20 at 8-10. In support of their argument, Happier and Mr. Rubin attach correspondence between Ms. Rubin and the USPTO to their motion to dismiss, supported by an attorney's affidavit. <u>See</u> ECF Nos. 20-1, 20-2, 20-3, 20-4. They then argue that the Court should disregard the allegedly contradicted allegations and that, once Ms. Rubin's pleading is shorn of them, Ms. Rubin is no longer able to state any of her claims. <u>See</u> ECF No. 20 at 10-12.

The Court may not consider the extrinsic documents that Happier and Mr. Rubin have proffered. Those documents are plainly not attached as exhibits to Ms. Rubin's counterclaim and third-party complaint. Nor are they incorporated in it by reference because Ms. Rubin's pleading does not "make a clear, definite[,] and substantial reference" to them. <u>See</u> <u>McKeefry v. Town of Bedford</u>, No. 18 Civ. 10386, 2019 WL 6498312, at *3 (S.D.N.Y. Dec. 2, 2019). Nor does Ms. Rubin's pleading

7

"rel[y] heavily upon" the proffered documents' "terms and effect," as would be necessary to render the documents "integral" to the pleading. See Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016). To be sure, certain of the proffered documents may be incorporated by reference into or be integral to Happier's own Complaint, cf. ECF No. 1 ¶¶ 21-28, but that does not change the documents' status in reference to Ms. Rubin's pleading.[5]

Accordingly, the Court declines to disregard any of Ms. Rubin's well-pleaded allegations.

B.  Judicial Estoppel

Tellingly, on reply Happier and Mr. Rubin downplay their argument that the Court should disregard the allegedly contradicted allegations. See ECF No. 24 at 8-9. Instead, they focus on a second argument -- that Ms. Rubin, having taken the positions she allegedly did in proceedings before the USPTO, is now judicially estopped from

---

[5] Ms. Rubin contends that the Court may not take judicial notice of the proffered documents, either, because judicial notice of public records is limited to the "purpose of noting what the documents state, rather than to prove the truth of their contents," whereas Happier and Mr. Rubin would have the Court consider the documents for their truth. See ECF No. 23 at 13-15 (quoting Hesse v. Godiva Chocolatier, Inc., 463 F. Supp. 3d 453, 462-63 (S.D.N.Y. 2020) (cleaned up)). As Ms. Rubin acknowledges, see ECF No. 23 at 13, Happier and Mr. Rubin made no request for judicial notice in their opening memorandum of law. To the extent that their reply memorandum cites two cases in which district courts took judicial notice of certain USPTO documents, see ECF No. 24 at 8-9, in neither of those cases did the court disregard well-pled allegations because of alleged contradictions between those allegations and documents that the court held were subject to judicial notice. See Jackson v. Netflix, Inc., 506 F. Supp. 3d 1007, 1013 (C.D. Cal. 2020); Prestige Pet Prods., Inc. v. Pingyang Huaxing Leather & Plastic Co., 767 F. Supp. 2d 806, 813 n.3 (E.D. Mich. 2011).

8

taking contrary positions before this Court. See id.; see also ECF No. 20 at 12-14.

The equitable doctrine of judicial estoppel is designed to ensure that "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." New Hampshire v. Maine, 532 U.S. 742, 749 (2001). A court may find that a party is judicially estopped where (1) its prior and current positions are "clearly inconsistent"; (2) its prior position was adopted by the court in that proceeding; and (3) the party would obtain an unfair advantage against the party seeking estoppel. See id. at 750-51. In the Second Circuit, judicial estoppel is further limited to "situations where the risk of inconsistent results with its impact on judicial integrity is certain." Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 148 (2d Cir. 2005).

Happier and Mr. Rubin have failed to establish even the first element of judicial estoppel. Ms. Rubin's prior statements to the USPTO are not "clearly inconsistent" with the allegations in her counterclaim and third-party complaint. See New Hampshire, 532 U.S. at 750. Instead, as Ms. Rubin argues, her correspondence with the USPTO took place at a time when Happier was using the marks "10% HAPPIER" and "TEN PERCENT HAPPIER," rather than simply "HAPPIER" or "HAPPIER MEDITATION." ECF No. 23 at 16. Ms. Rubin contends that she offered certain arguments to the USPTO in an attempt to distinguish her trademarks from those then being employed by Happier. See id. That

9

Ms. Rubin argued, in 2022, that there was little risk of confusion between Happier's then-trademarks and hers is not "clearly inconsistent" with her allegations in this case that Happier's rebranding has created the likelihood of (and actual) consumer confusion. See CC ¶¶ 20-21, 25-32. Similarly, Ms. Rubin's representation to the USPTO, in 2022, that her goods and services concerned habit practice rather than meditation and mindfulness is not "clearly inconsistent" with her allegations in this case that Happier, after its rebranding, is now offering "self-improvement . . . products and services" in a manner that infringes upon Ms. Rubin's trademarks, constitutes false designation and unfair competition, and dilutes the value of her trademarks in violation of federal and New York law. See id. ¶ 20; see also id. ¶¶ 33-90. Nor is it "clearly inconsistent" for Ms. Rubin to have represented to the USPTO, in 2022, that the "HAPPIER" trademark was not famous, yet now allege, three years later, that the HAPPIER Trademarks "have become strong and famous source identifiers" for her goods and services. See id. ¶¶ 11-12.

Even to the extent that there may be some inconsistencies between Ms. Rubin's former representations and her allegations here, the Court cannot conclude that the "risk of inconsistent results . . . is certain." Uzdavines, 418 F.3d at 148. As this litigation proceeds, there will be ample time for the parties to test one another's allegations and, specifically, for Happier and Mr. Rubin to respond to Ms. Rubin's claim that Happier's rebranding, in 2024, risked and in fact created consumer confusion. Cf. CC ¶¶ 20-21, 25-30.

For these reasons, the Court rejects the argument that Ms. Rubin is judicially estopped from asserting any of the allegations in her counterclaim and third-party complaint.

C.   Allegations as to Mr. Rubin

Although Happier makes no other argument for dismissal, Mr. Rubin offers one more -- that Ms. Rubin's allegations as to him personally are insufficient to state a claim. See ECF No. 20 at 15-16; ECF No. 24 at 10. This argument, too, fails.

Ms. Rubin's pleading alleges that Mr. Rubin "is the founder, Chief Executive Officer, and a shareholder" of Happier and, for that reason, "is responsible for the control, management[,] and operation of the business and affairs of [Happier] and makes all of the business decisions for [Happier]." CC ¶ 22. Ms. Rubin further alleges that Mr. Rubin "personally directed, authorized, approved, procured[,] and actively and directly participated in" the alleged unlawful conduct. Id. ¶ 23. Thus, she alleges, he "was and is a moving, active[,] and conscious force behind [Happier's] improper activities." Id. ¶ 24.

Mr. Rubin contends that these allegations are mere "generic recitations . . . of the legal standards" under which he might be subject to liability. ECF No. 20 at 16. Mr. Rubin's argument is most applicable to paragraph 24 of Ms. Rubin's pleading because the Second Circuit has held that a corporate officer may be personally liable for Lanham Act violations "if the officer is a moving, active, and conscious force behind the defendant corporation's infringement." See Muddy Bites, Inc. v. Evergreen USA LLC, No. 24 Civ. 7089, 2025 WL

11

1079494, at *8 (S.D.N.Y. Apr. 9, 2025). But Ms. Rubin pleads more than paragraph 24. She further alleges Mr. Rubin's titles at Happier, his role in Happier's management, and his personal involvement in the allegedly illegal activities. See CC ¶¶ 22-23. These allegations are of a piece with those that other courts in this District have found sufficient to impose Lanham Act liability upon a corporate officer. See Calvin Klein Jeanswear Co. v. Tunnel Trading, No. 98 Civ. 5408, 2001 WL 1456577, at *6 (S.D.N.Y. Nov. 16, 2001) (finding it "plain" that sole corporate officer may be personally liable); Chloé v. DesignersImports.com USA, Inc., No. 07 Civ. 1791, 2009 WL 1227927, at *11 (S.D.N.Y. Apr. 30, 2009) (same, where corporate officer "makes all the business decisions" of defendant company). Moreover, it is hardly improper for Ms. Rubin to plead these allegations on information and belief where "the facts are peculiarly within the possession and control of" Happier and Mr. Rubin and can readily be ascertained in discovery. See Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010).

V. Conclusion

For all these reasons, neither Happier nor Mr. Rubin has shown that Ms. Rubin's counterclaim and third-party complaint fails to state any of its claims as to either of them. Accordingly, their motion to dismiss is denied.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 19.

SO ORDERED.

New York, NY
July 14, 2025

_____
JED S. RAKOFF, U.S.D.J.

13